**In re Victoria J. PARKER, Debtor.**

**Colleen M. Olson, Trustee, Plaintiff,**

**v.**

**Curtis D. Parker, Defendant.**

**Bankruptcy No. HM 05–91271.
Adversary No. 07–99019.**

United States Bankruptcy Court,
W.D. Michigan.

Sept. 16, 2008.

Michael O'Neal, Grand Rapids, MI, for Plaintiff/Trustee.

David E. Bulson, Sault Ste. Marie, MI, for Defendant.

### OPINION RE: TRUSTEE'S APRIL 9, 2008 MOTION

JEFFREY R. HUGHES, Bankruptcy Judge.

Colleen M. Olson, the Chapter 7 trustee, ("Trustee") has filed a motion for summary judgment in this adversary proceeding. The motion is granted in part

### STANDARD OF REVIEW

Summary judgment under Rule 7056(a) [1] is appropriate if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. The court, in considering a motion for summary judgment, is to focus only upon material facts; that is, the court is to consider only those facts that are important vis-a-vis the applicable substantive law. Moreover, in determining whether there is a genuine dispute between the parties, the court is to draw all inferences from the record before it in the light most favorable to the non-moving party. However, if the pertinent record would not lead a rational trier of fact to find for the non-moving party even under such favorable circumstances, then summary judgment should be granted.

### BACKGROUND [2]

Victoria Parker ("Debtor") commenced her bankruptcy case on October 14, 2005. At that time she owned a home in Sault Ste. Marie as a tenant by the entirety with her husband, Curtis Parker ("Defendant"). However, Debtor and Defendant had decided to end their marriage and, as a consequence, they appeared before the state family court to complete the dissolution shortly after she had filed her bankruptcy. During that hearing, which took place on December 12, 2005, Debtor delivered to Defendant a quitclaim deed for her share of the home. Defendant appears to

---

1. FED R.BANKR.P. 7056. Unless otherwise indicated, all further citations in this opinion to "Rule ___" will be to the Federal Rules of Bankruptcy Procedure.

2. The record consists of each party's brief and the attachments to Trustee's brief. Those attachments are a quitclaim deed from Debtor to Defendant, the transcript of Debtor's divorce proceeding before the Chippewa County Circuit Court, and the verified matrix Debtor prepared in conjunction with her Chapter 7 petition. Both parties also appeared at the June 6, 2008 hearing and offered argument at that time.

have promised in return to hold Debtor harmless for whatever liability she might have with respect to the related mortgage.

Trustee has challenged the December 12, 2005 transaction. Trustee contends that the quitclaim deed Debtor delivered that day was an unauthorized post-petition transfer of the bankruptcy estate's property and, as such, is avoidable under Section 549 of the Bankruptcy Code.[3] Trustee also contends that she is entitled under Section 550(a) to a money judgment as opposed to only the avoidance of the transfer itself.

## DISCUSSION

### A. Avoidance of Post–Petition Transfer.

Section 549 states that:

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a) (emphasis added).

Defendant contends, though, that the bankruptcy estate never included Debtor's interest in the residence as its property.

Defendant's argument stems from the peculiar nature of an entireties estate. Michigan is one of the few remaining jurisdictions that still recognizes this common law tenancy. Interestingly, the Supreme Court itself had occasion to describe Michigan's version of this estate in *U.S. v. Craft*,

535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). Justice O'Connor, who wrote the majority opinion, made these observations:

A tenancy by the entirety is a unique sort of concurrent ownership that can only exist between married persons.

\* \* \*

Like joint tenants, tenants by the entirety enjoy the right of survivorship. Also like a joint tenancy, unilateral alienation of a spouse's interest in entireties property is typically not possible without severance. Unlike joint tenancies, however, tenancies by the entirety cannot easily be severed unilaterally. 4 Thompson § 33.08(b).

\* \* \*

Each spouse—the wife as well as the husband—may also use the property, exclude third parties from it, and receive an equal share of the income produced by it. See § 557.71 (West 1988). Neither spouse may unilaterally alienate or encumber the property, *Long v. Earle, supra,* at 517, 269 N.W., at 581; *Rogers v. Rogers,* 136 Mich.App. 125, 134, 356 N.W.2d 288, 292 (1984), although this may be accomplished with mutual consent, *Eadus v. Hunter,* 249 Mich. 190, 228 N.W. 782 (1930). Divorce ends the tenancy by the entirety, generally giving each spouse an equal interest in the property as a tenant in common, unless the divorce decree specifies otherwise. Mich. Comp. Laws Ann. § 552.102 (West 1988).

---

**3.** 11 U.S.C. §§ 101, *et seq.* Debtor's petition pre-dates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, § 1501(B)(1), 119 Stat. 23.

Unless otherwise indicated, all citations in this opinion to the Bankruptcy Code will be to the Bankruptcy Code as written prior to the BAPCPA amendments.

*Craft*, 535 U.S. at 280–82, 122 S.Ct. at 1421–22.[4]

■ Whether the spouse's debt is jointly owned or not is important in considering whether the entireties property can be attached. The distinction is due to each spouse's inability to convey his or her interest in the entireties property without the consent of the other. *Long v. Earle*, 277 Mich. 505, 517, 269 N.W. 577 (1936). If a spouse is unable to make a unilateral conveyance voluntarily, then it follows that the spouse cannot do so involuntarily by exposing the property to the claims of his or her separate creditors. MICH. COMP. LAWS 600.6023a. It stands to equal reason, though, that property held by the entireties may be subject to execution if the creditor's claim is against both spouses.

Defendant seizes upon the immunity of entireties property from all but joint claims to make his case. What Defendant contends is that the commencement of Debtor's bankruptcy proceeding was of no consequence to the entireties estate she then owned with him because she had no creditors who were also his creditors. However, Defendant is not correct.

■ An "estate" is created each time a bankruptcy case is commenced. 11 U.S.C. § 541(a). Like a corporation or a trust, a bankruptcy estate is a distinct legal entity. *Farmer v. Crocker National Bank (In re Swift Aire Lines, Inc.)*, 30 B.R. 490, 495 (9th Cir. BAP 1983); *In re Dow Corning Corp.*, 270 B.R. 393, 398–99 (Bankr. E.D.Mich.2001); *In re Roy Stanley, Inc.*, 217 B.R. 23, 25 (Bankr.N.D.N.Y.1997); *In re SeaEscape Cruises, Ltd.*, 201 B.R. 321,

---

4. Entireties property, like many other aspects of the common law, has evolved over time. A tenancy by the entirety was originally characterized as creating no individual rights; rather, the "marital unit" in effect became the owner, with both the husband and wife in theory becoming together vested with the entire title as one.

The notion of husband and wife being a single entity derived from feudal times.

A species of common-law concurrent ownership, tenancy by the entireties developed as part of the English feudal system of land tenures. The exigencies of feudalism demanded that the functions of ownership be vested in males, presumably capable of bearing arms in war. Women were lightly regarded legally, and especially married women—whose very identities, in most respects, were considered merged and lost in the personalities of their husbands. For purposes of property and of contract, the married woman was under a complete legal blackout termed coverture. **Man and wife were one and the one was male.**

Phipps, Tenancy by the Entireties 25, Temp. L.Q. at 24 (1951) (emphasis added). *See also, Craft*, 535 U.S. at 281, 122 S.Ct. at 1422. ("At common law, all of the other rights associated with the entireties property belonged to the husband: as the head of the household, he

could control the use of the property and the exclusion of others from it and enjoy all of the income produced from it.").

However, Michigan courts long ago abandoned this archaic fiction.

Now, however, and since the adoption of the constitution of 1850, and the act relative to the property of married women, already referred to, **husband and wife no longer constitute a single person in contemplation of law.** The wife may take, hold, and dispose of her separate property as though she were unmarried, and all rights and disabilities of either party growing out of the old doctrine of unity of person, have disappeared with the doctrine itself, which, being directly repugnant to both the letter and the spirit of these enactments, no longer exists.

*Fisher v. Provin*, 25 Mich. 347, 349, 1872 WL 5989 at *2 (1872) (emphasis added).

The Michigan entireties estate today is more akin to a joint tenancy in which both husband and wife control the alienation and enjoyment of the fee interest and both also have an indestructible right of survivorship. *See, e.g., Morgan v. Cincinnati Insurance Co.*, 411 Mich. 267, 284–89, 307 N.W.2d 53 (1981) (Fitzgerald, concurring opinion); *Craft*, 122 S.Ct. at 1422 ("Michigan's version of the estate is typical of the modern tenancy by the entirety.").

323 (Bankr.S.D.Fla.1996). The bankruptcy estate exists apart from the debtor. It acts through its legal representative, the bankruptcy trustee. 11 U.S.C. § 323(a).

■ Under the former Bankruptcy Act, exempt properly, which in Michigan could include tenancies held by the entirety, did not even become property of the estate. 11 U.S.C. § 110(a) (repealed). *See also, Liberty State Bank v. Grosslight (In re Grosslight)*, 757 F.2d 773, 775 (6th Cir. 1985). The Bankruptcy Code, though, radically changed the law by transferring into the estate all of the debtor's property, including property that he might claim as exempt.

> Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts. § 522(c). **No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy.**

*Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991) (emphasis added).

■ As for tenancies by the entirety, "[i]t is now well established that this provision [Section 541(a)] brings entireties properly into the bankruptcy estate." *Grosslight, Id.*

However, it is important to also recognize that the Bankruptcy Code distinguishes between the property itself and what constitutes the debtor's interest in that property for purposes of defining "property of the estate."

> (a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property ...:
>
> (1) [A]ll ... interests **of the debtor** in property as of the commencement of the case[.]

11 U.S.C. § 541(a)(1) (emphasis added).

For example, all of Blackacre will become the estate's property if the debtor had owned it in fee and without encumbrance at the outset of his case. If, though, the debtor had owned it as a tenant in common with B, then only the debtor's undivided interest in Blackacre will become property of the estate and it is only that undivided interest that will be administered for the benefit of the estate's creditors. *See, e.g.*, 11 U.S.C. § 726(a). As for B, his undivided interest in Blackacre will continue to remain "outside of estate," if you will.[5]

■ It is well established that while applicable state law will continue to generally govern whatever property interests the bankruptcy estate may acquire, the Bankruptcy Code itself can preempt that law. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The extent of that preemption, though, will vary. For example, in the case of a tenancy in common, the bankruptcy trustee's authority under Section 363(b) to sell the undivided interest in that tenancy would mirror

---

5. The lingering view that entireties property is owned by husband and wife as a single entity arguably offers the option of treating all of the entireties property, as opposed to just the debtor's undivided interest in the property, as becoming the "property of the estate" upon commencement of the case. This view might suffice as a solution so long as only one spouse files, although it would still seem to contravene Section 541(a)(1)'s clear language that only the debtor's interest in property is to become property of the estate. However, if both spouses were to file, treating each bankruptcy estate as if it was the so-called "marital unit" of the entire entireties estate would be absurd, for it would in effect double the amount of property to be administered. Again, the better approach is to join both the United States and Michigan Supreme Courts in recognizing that the modern tenancy by the entireties is no longer based upon the long rejected fiction of husband and wife being one under the law. *See*, n. 4, *supra*.

the right that the debtor also had under state law to dispose of it.

■ On the other hand, the commencement of a bankruptcy case will have a profound effect upon a tenancy by the entirety. Indeed, the immediate transfer of the debtor's interest in the entireties property to the newly created estate upon the commencement of a voluntary case is itself in contravention of the strict prohibition under Michigan law against either spouse unilaterally conveying his or her interest without the consent of the other.

Nor will the non-filing spouse fare any better thereafter, for the bankruptcy trustee would then have the authority under Section 363(b) to sell the acquired interest to whomever he chooses, again in contravention of Michigan's entireties law.[6] And it is ironic that the debtor spouse's election to exempt or not the undivided interest, which would be yet another unilateral decision by that spouse, might be the only way the non-filing spouse could be spared from having to share the former entireties property with a stranger and perhaps from losing the property altogether.[7]

6. *Grant v. Himmelstein (In re Himmelstein)* does hold that "the trustee's powers under 11 U.S.C. § 363 come to fruition when and only when he can stand in the shoes of a creditor who holds a joint in personam judgment against both spouses." 203 B.R. 1009, 1013 (Bankr.M.D.Fla.1996). This conclusion, though, derives from *Himmelstein's* other conclusion that a debtor's interest in entireties property becomes property of the estate only when there are joint creditors.

Therefore, because Florida law allows for a joint creditor holding a judgment to pursue entireties property, the Code will not shield the debtor who wishes to claim an exemption for such property. Therefore, under § 522(b)(2)(B) such properties are not exempt from process under state law and become property of the estate.

*Id.*

*Himmelstein* however, has it backwards. The debtor's interest in entireties property automatically becomes property of the estate by operation of Section 541 and it is only the successful exemption of that interest by the debtor thereafter that again removes it by operation of Section 522(*l*). *See, Owen,* 111 S.Ct. at 1835. Therefore, it stands to reason that a trustee has the ability to sell an interest in entireties property under Section 363(b) unless and until the debtor successfully removes that interest from the estate by exemption. Granted, the absence of joint creditors would facilitate that removal if the debtor were to choose to exempt that interest under Section 522(b)(2)(B) (pre-BAPCPA). However, it does not follow from this that the trustee cannot sell the entireties interest under Section 363(b) unless a joint creditor can be found.

*Himmelstein's* further suggestion that the nature of entireties property under state law impairs the trustee's ability under Section 363(b) to unilaterally dispose of the debtor spouse's undivided interest in that property is also incorrect. Again, *Butner* holds that the Bankruptcy Code preempts state law. Moreover, *Himmelstein* does not address the situation where there is an undivided interest in entireties property but the debtor has elected instead to claim exemptions under the federal scheme of Section 522(b)(1) (pre-BAPCPA). The trustee would clearly in such an instance have the authority to sell the non-exempt portion of the debtor's interest in the entireties property even though there might not be any creditor with "a joint in personam judgment." Indeed, were it otherwise, the debtor in effect would be able to realize an exemption in that undivided interest that the Bankruptcy Code itself does not recognize.

7. In fact, Section 541's automatic transfer of one or even both of the undivided interests in the entireties property raises the question of whether the entireties estate can even survive the commencement of the case. Remember, *Butner* instructs that state law is to generally dictate property rights in a bankruptcy proceeding and Michigan law is quite clear that no one other than a husband and wife can be tenants by the entirety and that neither spouse can convey his or her interest in the entireties estate without the other's consent. Consequently, Michigan law itself strongly suggests that a tenancy by the entireties will cease upon the commencement of a bankruptcy case because: (a) the post-petition co-tenants will under no circumstance be married,

Therefore, there is no question that the bankruptcy estate in this instance had acquired Debtor's undivided entireties interest in the Sault Ste. Marie residence when she filed her petition and that Trustee in turn was capable of then conveying that interest herself on behalf of the estate when Debtor chose to deliver the quitclaim deed to Defendant Granted, Debtor still had the opportunity to remove the undivided interest from the estate by exemption and, had she chosen the so-called "state" exemption scheme under Section 522(b)(3),[8] it would have been to her benefit that she and Defendant owed no joint debt.[9] However, Debtor chose instead the "federal" exemption scheme under Section 522(b)(2)[10] and that scheme is indifferent to whether there may be joint claims or not. In addition, the time within which the Trustee and other parties in interest had to object to Debtor's claimed exemptions had not yet expired when Debtor delivered the quitclaim deed. *See*, FED.R.BANKR.P.

4003(b). Consequently, it really made no difference what exemption scheme had been chosen, for the undivided entireties interest claimed as exempt would not have transferred out of the estate under either circumstance until at least the deadline for objecting to exemptions had passed. 11 U.S.C. § 522(*l*).

▮ In summary, I conclude that Debtor did in fact transfer "properly of the estate" within the meaning of Section 549(a) when she executed and delivered on December 12, 2005 the quitclaim deed to her ex-husband concerning the interest she had held in their Sault Ste. Marie home. I also conclude that there is no other genuine issue of fact regarding Trustee's ability to avoid the subject transfer under Section 549. Debtor clearly did not have the authority to transfer the bankruptcy estate's interest in the residence since at that time the requisite authority rested with only Trustee.[11] Moreover, this court's own records establish both that

(b) at least one of the post-petition co-tenants will not even be flesh and blood, but rather an incorporeal fiction of the law, and (c) this new co-tenant, unlike its predecessor debtor, would be capable of unilaterally selling the interest acquired absent the debtor's successful exemption of the entire interest. Of course, *Butner* also holds that the Bankruptcy Code itself can override state law and it is upon this preemption that courts have apparently relied to still conclude that the entireties estate can be maintained post-filing. *See, In re Spears*, 313 B.R. 212 (W.D.Mich.2004); *In re Ford*, 3 B.R. 559 (Bankr.D.Md.1980). Unfortunately, the actual justification within the Bankruptcy Code for reaching this conclusion remains illusive.

8. 11 U.S.C. § 522(b)(2) (pre-BAPCPA).

9. The existence of joint creditors will diminish the exemptability of an undivided entireties interest under Section 522(b)(2) (pre-BAPCPA) since subpart (B) of that section permits the exemption of such an interest only to the extent that the interest is not subject to process under applicable state law. Consequently, the interest's exposure to joint

creditors under MICH. COMP. LAWS § 600.2023a would have decreased the value of her exemption had Debtor chosen to take her exemptions under Section 522(b)(2) (pre-BAPCPA).

10. 11 U.S.C. § 522(b)(1) (pre-BAPCPA).

11. Of course, finding that the interest transferred by Debtor on December 12, 2005 actually belonged to the bankruptcy estate does beg the question as to whether there was ever a transfer in the first place. In other words, how could Debtor transfer something if she no longer owned it? The answer lies in what is actually "properly" under the law. It is convenient to think of property ownership as synonymous with the property itself. If Blackacre is a wooded, one acre lot, then one is inclined to think of his ownership as whatever is within the metes and bounds of that lot—the dirt, the trees, the space above it, etc. However, real property, at least from a legal point of view, is better understood as ownership of a set of abstract rights recognized under the applicable law that happen to relate to whatever is the physical property described. For example, it is the law's rec-

**20**

Debtor provided to the court Defendant's name and mailing address and that the court then mailed to him notice that Debtor had commenced her bankruptcy case. Consequently, Defendant cannot avail himself of the protection Section 549(c) affords by contending that he was ignorant of Debtor's bankruptcy.[12]

 Defendant argues as a last resort that it would be futile to avoid the transfer because the bankruptcy estate will never benefit from the effort. Key to his argument is the fact that Defendant would continue to own an undivided interest in the Sault Ste. Marie residence even after the transfer's avoidance and that Trustee will face considerable, if not insurmountable, obstacles in selling that interest under Section 363(h).[13]

---

ognition that I am entitled to the exclusive possession of Blackacre that defines my "ownership" of Blackacre rather than my actual occupation of some portion of the physical site. Indeed, Judge Brandeis' "bundle of sticks" metaphor that Justice O'Connor referenced in *Craft* makes this same point. *Craft*, 122 S.Ct. at 1420.

If, though, it is the Debtor's rights in her residence, as opposed to the residence itself, that became property of the estate in this instance, then it is easier to understand how Debtor could still transfer that "property" even after it had become the bankruptcy estate's by operation of Section 541(a). Assume, for example, that A had already delivered a deed for Blackacre to B when she then delivered to C a second deed to Blackacre. At first blush it would seem that A had nothing to convey to C. However, under Michigan's race-notice recording laws, A was still capable of selling rights in Blackacre to C and, in fact, the rights acquired by C would be superior to the rights previously granted by A to B if C was fortunate enough to have recorded his deed first and without actual knowledge of the prior conveyance to B. MICH COMP. LAWS ANN. § 565.29.

These concepts are equally applicable in the context of post-petition transfers of property of the estate. There is no question that the bankruptcy estate, as transferee of the bundle of rights Debtor enjoyed in the Sault Ste. Marie residence, became the lawful owner of those rights. However, Debtor was nevertheless still in the position to ostensibly convey those same rights to other parties, including her former husband, and in fact under certain circumstances her post-petition transfer would have been successful. 11 U.S.C. § 549(c). Consequently, it is certainly possible within the abstractions of the law for Debtor to have performed the metaphysical act of transferring to Defendant something that by operation of the bankruptcy laws had ceased being hers some two months before.

12. The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless . . .

11 U.S.C. § 549(c).

13. Defendant relies extensively upon *Lewis v. Harlin (In re Harlin)*, 325 B.R. 184 (Bankr. E.D.Mich.2005) as support for his position, The court in *Harlin* made two significant determinations concerning Section 363(h). First, it concluded that "[a] trustee's right under § 363(h) applies only to property of the estate." *Id.* at 188. It then held later that "when only one spouse files bankruptcy, a trustee will not be able to sell entireties property under § 363(h) in the absence of joint creditors." *Id.* at 190. However, with all due respect, neither conclusion is in fact consistent with what the Bankruptcy Code actually says.

As previously discussed, Section 541(a)(1) includes within what becomes property of the estate upon the case's commencement only the debtor spouse's interest in the entireties property. The non-filing spouse's interest in the same property remains "outside of the estate," just as it would if the property were owned as tenants in common instead and only one of the co-tenants had filed for relief.

The debtor's undivided interest in the property, whether it be held in the entireties or in common, would then be an interest of the bankruptcy estate (*i.e.*, property of the estate) that the trustee could clearly "use, sell, or lease" under Section 363(b). Indeed, Section 363(h) itself is quite clear that the authority contemplated under that subsection does not

Defendant may be correct. For exam-

apply to the estate's own undivided interest in the co-owned property, but rather to only the undivided interest owned by the other co-tenant.

"... [T]he trustee may sell **both** [1] the estate's interest, under subsection (b) or (c) of this section, **and** [2] the interest of any co-owner in property."

(Emphasis added). *Cf.* 11 U.S.C. § 363(f) ("The trustee may [1] sell property [of the estate] under subsection (b) and (c) of this section [2] free and clear of any interest in such property of an entity other than the estate ...").

*Harlin* is correct that a trustee may not seek the additional authority under Section 363(h) to sell the co-owner's undivided interest in jointly owned property without the estate itself also having an undivided interest to sell under Section 363(b). However, it does not follow from this that a trustee is incapable of still selling the estate's undivided interest in the commonly owned property if the Section 363(h) authority is refused. Again, that undivided interest would unquestionably be "property of the estate" within the broad meaning given that phrase by Section 541(a)(1) and, as such, would be within the equally broad authority that Section 363(b) gives to a trustee to sell that interest.

*Harlin*'s other conclusion, that Section 363(h) may be invoked only if there are joint creditors of the debtor and non-debtor spouse, also finds no support in the Bankruptcy Code. For example, Section 363(h) itself makes no reference to joint claims whatsoever. Rather, it simply sets out the circumstances under which other co-owners' interests, whether held in common, as joint tenants, or by the entireties, may be sold as part of the bankruptcy proceeding. Indeed, Section 363(h) is in reality nothing more than an expansion of the partition rights state law already recognizes for owners of undivided interests in some types of tenancies.

*Harlin* has apparently confused the exemption of entireties interests with the estate's right to sell such interests. A debtor's interest in entireties property, having become property of the estate, may in turn be exempted. Indeed, in Michigan, the entire interest may be exempted under the state scheme permitted by Section 522(b)(2) (pre-BAPCPA) provided that there are no joint claims against debtor and the debtor's spouse. Mich. Comp. Laws § 600.6023a. If, though, there are joint

claims, then a portion, if not all, of the undivided entireties interest would be ineligible for exemption.

Section 363(b), of course, would then become relevant, for the undivided entireties interest, which would continue to remain as property of the estate, would have to be liquidated so as to realize the non-exempt portion of its value for the benefit of the estate's creditors. But then again, Section 363(b) would also be relevant if the debtor chose the federal scheme of exemptions under Section 522(b)(1) (pre-BAPCPA) and the value of the undivided entireties interest was in excess of the exemptions allowed under Section 522(d). And, in turn, Section 363(h) would inevitably come into play under either scenario since the trustee would presumably prefer to sell the combined interests in the entireties property as opposed to only the debtor's separate interest and the trustee cannot do that without the additional authority permitted him by Section 363(h).

In summary, the existence of joint claims or not with respect to the trustee's administration of a debtor's undivided interest in entireties property is important only for purposes of deciding what portion, if any, of that interest can be removed from the bankruptcy estate by exemption, and then only if the state scheme of exemptions is chosen. Put differently, the struggle over joint claims is between what the trustee may sell as the estate's property under Section 363(b) and what must be returned to the debtor as his exemption under Section 522(b)(2) (pre-BAPCPA). As for Section 363(h), it has no role whatsoever in this aspect of the case's administration. Rather, Section 363(h) becomes relevant only if the trustee has prevailed and the trustee desires to realize the non-exempt portion of the estate's interest in the entireties property by selling the co-owner's interest in the entireties property as well.

As a final comment, this court would note that *Harlin* did not have to reach the conclusions that it did because the debtor in *Harlin* had already been allowed to exempt the undivided entireties interest from the bankruptcy estate. Consequently, as the *Harlin* court observed, the debtor's entireties interest in the marital residence "was no longer property of the estate." *Id.* at 189. Therefore, the trustee in *Harlin* had nothing under Section 363(b) to sell in the first place and, as such, had no reason to even invoke Section 363(h).

ple, it is possible that Trustee will be ultimately left with selling only the Debtor's undivided interest in property that the prospective purchaser would have to then share with an inhospitable former spouse. Moreover, whatever equity Debtor may have had in the residence could easily be exhausted by selling costs and Debtor's now allowed Section 522(d)(5) exemption even if Trustee were to sell both Defendant's and the estate's interests.

Section 549, though, does not recognize futility as a defense and Defendant has failed to cite any authority otherwise acknowledging its availability to defeat Trustee's effort under that section. Perhaps Trustee's decision to pursue this cause of action will turn out to be ill-advised. If so, then the estate's creditors may at some point have something to discuss with Trustee. As for Defendant, he too may have an opportunity to protest Trustee's plans should she later attempt to sell his interest as well under Section 363(h). But for now, all that is at issue is whether Debtor's December 12, 2005 transfer should be avoided and Trustee has unquestionably established that it should be even under

the demanding standard that a motion for summary judgment requires.[14]

## B. *Recovery of Money Judgment.*

Defendant's second argument goes to the relief sought. Trustee does not want to simply avoid the December 12, 2005 transfer so that she can then dispose of the avoided interest herself. Rather, Trustee requests that the court enter a money judgment in her favor equal to the value of Debtor's interest By Trustee's reckoning, the amount of the judgment should be $13,159.[15]

■ It is questionable, though, whether Trustee is even positioned at this time to be awarded the relief she demands. Section 550 does, of course, permit the estate to recover the value of an avoided transfer in lieu of the transfer itself "if the court so orders." However, Section 550(a) is not an inevitable consequence of a successful avoidance action under Section 549 or, for that matter, under any other similar section. Rather, recovery under Section 550(a) stands apart from these other sections and, as such, must be separately pled.

---

**14.** Defendant has not raised the so-called "domestic relations exception" discussed by the Supreme Court in *Marshall v. Marshall*, 547 U.S. 293, 305–8, 126 S.Ct. 1735, 1744–46, 164 L.Ed.2d 480 (2006). However, that exception does present quasi-jurisdictional issues and, as such, some mention is warranted. First, the exception is limited. *Id.* Moreover, the reasoning the Court applied in *Marshall* regarding the similar "probate exception" seems equally applicable for this exception: that it curtails the bankruptcy court's administration of property subject to its jurisdiction only to the extent that the state court's own unique domestic or probate jurisdiction over the same property would also be obstructed. There is, though, no such obstruction here. Debtor undeniably owned an interest in the Sault Ste. Marie residence prior to the commencement of her bankruptcy case and that interest became

subject to this court's jurisdiction when she filed her petition for relief. Moreover, the bankruptcy laws themselves subjected that interest to Debtor's creditors. Therefore, as a consequence, the interest's availability for purposes of accomplishing a property division in Defendant's and Debtor's divorce proceeding was conditioned upon this court first adjudicating the respective rights of Debtor and her creditors in the same property. *See, also, Ankenbrandt v. Richards*, 504 U.S. 689, 704, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992) (only divorce, alimony and child custody decrees remain outside federal jurisdictional bounds).

**15.** Trustee contends that the value of the residence, net of liens, is $26,318.00. Half of this amount is $13,159.00.

[A]voidance and recovery are distinct concepts and processes. This is clear from both the statute itself and from its legislative history. Avoidance and recovery are addressed in two separate sections of the code, 11 U.S.C. § 544 and § 550, respectively, and have two separate statutes of limitations, 11 U.S.C. § 546(a) and § 550(f), respectively. According to the House Report for the Bankruptcy Reform Act of 1978, § 550 "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." H.R.Rep. No. 95–595, at 375 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6331.

*Suhar v. Burns* (*In re Burns*), 322 F.3d 421, 427 (6th Cir.2003).

■ Unfortunately for Trustee, her complaint does not include a separate count for recovery under Section 550. Nor does its prayer for relief make any reference to that section. All that is requested is that "Debtor's transfer of the Chippewa Property may [sic] be avoided by the Trustee pursuant to the provisions of 11 U.S.C. 3549." Complaint, (Dkt. No. 1). Therefore, the only relief to which Trustee is currently entitled is the avoidance contemplated by that section.

Moreover, it is not apparent that Section 550 relief would ever be appropriate in this instance. There is no question that the avoidance of a transfer alone would often be meaningless without there also being some type of a recovery under Section 550. For example, it would make little sense for a trustee to avoid as preferential a debtor's payment to a creditor without seeking as well a money judgment under Section 550 to recover the amount transferred. But, as *Burns* instructs, a Section 550 recovery is not always required.

The fact that avoidance and recovery are distinct does not mean that avoidance cannot trigger recovery, but it does suggest that avoidance need not always trigger recovery.

*Burns*, 322 F.3d at 427.[16]

In this instance it does appear that Section 549 avoidance alone is sufficient and, as such, further relief under Section 550 is unnecessary. Again, the transfer in question is Debtor's December 12, 2005 delivery of a quitclaim deed to Defendant of her (or, more accurately, her bankruptcy estate's) undivided interest in the Sault Ste. Marie residence. Obviously, the conveyance should be avoided since, as already discussed, Trustee has met all of the elements required by Section 549. However, what more relief is required? A turnover order would undoubtedly be needed had the avoided conveyance to Defendant been instead Debtor's transfer of her ear or some furniture. Likewise, Defendant's subsequent transfer of his newly acquired fee in the Sault Ste. Marie residence would have justified Trustee obtaining a money judgment against him for Debtor's share of the proceeds realized. In this instance, though, all that occurred was the simple transfer by quitclaim deed of Debtor's undivided interest in real prop-

---

16. *Burns* is admittedly an unusual case. The Chapter 7 trustee in *Burns* had sought to avoid under Section 544(a) a lien that the defendant had received by assignment from the original mortgagee. Although trustee had not pled Section 550, the defendant nonetheless argued that it was entitled to the good faith transferee defense afforded under subpart (e) of that section. However, the panel in *Burns* concluded that there had been no need for the trustee to have sought Section 550 relief in that case and, as such, the defendant could not rely upon the desired defense.

Of course, it is Trustee, not Defendant, who is in this instance contending that Section 550 applies. Nonetheless, it would appear that *Burns'* reasoning—that Section 550 relief stands separate and apart from the avoidance actually contemplated—applies equally here.

erty in which Defendant has had the other undivided interest all along. Consequently, nothing more beyond avoiding the quitclaim deed itself is required at this time.[17]

■ As my colleague, the Hon. James D. Gregg, has observed, "[t]he purpose of section 550 is 'to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.'" *Feltman v. Warmus (In re American Way Service Corp.)*, 229 B.R. 496, 530–31 (Bankr.S.D.Fla.1999) (citations omitted). *See also, USAA Fed Savings Bank v. Thacker (In re Taylor)*, 390 B.R. 654, 663 (9th Cir. BAP 2008). Conversely, it follows that Section 550 need not be invoked when the avoidance of the transfer itself is sufficient relief, as is the case here.

■ Trustee undoubtedly would prefer a money judgment over the mere avoidance of the transfer made since it would relieve Trustee both of having to commence a Section 363(h) action against Defendant and then having to bear the costs of the ensuing sale. However, a trustee may not use Section 550(a) as an administrative shortcut or to alleviate problems that are inherent with the property itself. Compelling Defendant's cooperation in disposing of the residence may be extremely difficult and the market for undivided interests in Sault Ste. Marie residences may be small. Nonetheless, these are problems that Trustee would have faced had Debtor not made the transfer and, as such, these are the same problems that she still must face now that Debtor's transfer of her undivided interest to Defendant is avoided.

These observations, though, are premature, for, again, Trustee has not yet actually pled Section 550 in her current action. Therefore, it remains within Trustee's discretion to commence a new adversary proceeding for such relief. This opinion, though, may temper that decision.

### *CONCLUSION*

Trustee has established that here is no genuine issue of fact and that she is otherwise entitled as a matter of law to a summary judgment that the December 12, 2005 quitclaim deed of her undivided interest in the Sault Ste. Marie residence to Defendant is void under 11 U.S.C. § 549(a). FED.R.BANKR.P. 7056. However, Trustee is not entitled under that section to the additional relief she is seeking, that being the entry of a money judgment against Defendant in the amount of $13,159.00. If Trustee is entitled to that relief, it must be awarded under Section 550(a) which, at this point, has not been pled.

The court will enter a separate order consistent with this opinion.

---

**17.** It is, of course, possible that Trustee might ultimately succeed in selling only Debtor's undivided interest in the residence and that Defendant might then prevent the buyer from enjoying equal enjoyment of the same. Consequently, some type of order to protect the buyer might still be appropriate under Section 550. Trustee, though, should have until a year from now to seek that relief were it to become necessary, for an action under Section 550(a) can be commenced up to a year after the avoided transfer. 11 U.S.C. § 550(f).