**In re Nichole R. HERTER, Debtor.**

**R. Sam Hopkins, Plaintiff,**

**v.**

**Idaho State University Credit Union, Nichole R. Herter and David J. Herter, Defendants.**

**Bankruptcy No. 08–41160–JDP. Adversary No. 10–8093–JDP.**

United States Bankruptcy Court, D. Idaho.

Dec. 15, 2011.

---

Daniel Green and Brett Cohoon, Racine, Olson, Nye, Budge & Bailey, Chartered, Pocatello, ID, Attorney's for Plaintiff.

Jed W. Manwaring, Evan Keane, LLP, Boise, ID, Attorney for Defendants.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### Introduction

During the pendency of her Chapter 7[1] bankruptcy case, debtor Nichole Herter ("Debtor") transferred an interest in a jointly-owned Pocatello home (the "Property") to her ex-husband, David Herter ("Herter"). Herter, who had recently completed his own chapter 7 case, then refinanced the existing second-position mortgage on the Property with Idaho State University Credit Union ("ISUCU"; collectively, Herter and ISUCU are the "Defendants"), thereby paying off the foreclosing, first-position secured lender, and executing a new promissory note and deed of trust in favor of ISUCU.

When he learned of Debtor's transfer and the refinancing, the chapter 7 trustee in Debtor's case, R. Sam Hopkins ("Trustee"), commenced this adversary proceeding. In his complaint, Trustee sought to avoid Debtor's transfer to Herter and to

---

**1.** Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

invalidate the new deed of trust granted by Herter to ISUCU. Defendants opposed Trustee's action, and asserted a counterclaim to recover attorneys' fees and costs. Defendants also filed an application for approval of an administrative expense claim in Debtor's bankruptcy case for the amount of the new loan. The parties and Court agreed to resolve Defendants' administrative expense application in connection with this adversary proceeding.

The Court conducted a consolidated trial regarding the adversary proceeding and application for administrative expense on October 13, 2011, after which the parties submitted closing briefs, and the Court took all of the issues under advisement. Having considered the record and evidence, the parties' submissions, and applicable law, this Memorandum constitutes the Court's findings of fact and conclusions of law. Rules 7052, 9014.

### Background[2]

Herter and Debtor, as husband and wife, purchased the Property in 2002. In doing so, they executed a deed of trust on the Property in favor of Midland Mortgage Co. ("Midland")[3] to secure a loan of $74,760. Four years later, Herter and Debtor executed a second deed of trust against the Property in favor of ISUCU, to secure a revolving credit line of $27,500.

On October 28, 2008, in anticipation of their divorce, Herter and Debtor executed a self-drafted proposed divorce decree un-

der the terms of which they agreed the Property would be sold, and the profits evenly split. However, after filing the proposed decree with the state court, but before entry of the divorce decree, Herter filed a chapter 7 bankruptcy petition. As a result, because it was the parties' community property, the Property became property of Herter's bankruptcy estate. § 541(a)(2); June 21 Decision at 16–21. Shortly thereafter, Debtor filed her own chapter 7 petition. Trustee was assigned to act as the case trustee in both cases.

The state court then entered its divorce decree. Due to Herter's active bankruptcy, however, and the resulting automatic stay, while the decree terminated Herter and Debtor's marriage, the property provisions of the divorce decree were void *ab initio* and of no legal effect inasmuch as they attempted to divide the couple's property. September 2 Decision at 10–11.

In his bankruptcy case, Herter properly claimed an Idaho homestead exemption in the Property's value up to $100,000. Bankr. No. 09–41117, Dkt. No. 1. During the course of Herter's case, Defendants approached Trustee with a proposed stipulation granting relief from the automatic stay as to the Property in favor of ISUCU. Trustee conducted an equity analysis and determined that, under the circumstances existing at the time, there was no equity in the Property available for Herter's bankruptcy estate.[4] Trustee therefore signed

---

2. Defendants filed a motion for summary judgment in April 2011, and, after a hearing, the Court denied that motion (the "June 21 Decision"). Defendants next filed what the Court viewed as a motion seeking relief from its June 21 Decision and Order. While slightly modifying its analysis as a result of that motion, the Court again determined that summary judgment was not appropriate (the "September 2 Decision"). The background information recited above includes the facts established at trial, as well as the facts and conclusions of law established in the Court's

June 21 and September 2 Decisions, as relevant to the remaining issues. Where conclusions of law are reiterated, citations to the Court's prior decisions are included.

3. When executed, the deed of trust was in favor of Midland's predecessor in interest, First Horizon Home Loan Corp. *See* June 21 Decision.

4. While Trustee's records for the Herter bankruptcy have since been purged, he credibly

the proposed stipulation. Midland also moved for relief from the automatic stay in Herter's case, and Trustee did not object. The Court entered orders for stay relief as to the Property for both creditors in Herter's case.

In spite of obtaining relief from stay, neither ISUCU nor Midland foreclosed their trust deeds on the Property during Herter's bankruptcy case. In addition, because of the amount of secured debt against it, Trustee did not seek to sell the Property. The Court entered an order discharging Herter and closing his bankruptcy case on February 12, 2009, and the Property was technically abandoned. June 21 Decision at 22–24.

Because Herter's and Debtor's divorce was effective by the time Herter's bankruptcy case closed and the Property was abandoned, and because the now former spouses could no longer hold the Property as community property, state law operated to fill the gap left by the voided divorce decree property distribution. September 2 Decision at 11–12. Herter and Debtor thereafter held the Property as tenants in common, each with a one-half interest in the Property. *Id.* Because Herter's bankruptcy case closed within 180–days of the date that Debtor filed her bankruptcy petition, Debtor's interest in the Property entered her bankruptcy estate, by operation of § 541(a)(5)(B), at that time. *Id.*

When they approached Trustee to request that he stipulate to stay relief for ISUCU in Herter's bankruptcy case, Defendants also approached Trustee for similar relief as to the Property in Debtor's case. Based on an analysis of the Property and circumstances at the time, Trustee determined there was no equity in the Property for Debtor's bankruptcy estate, and signed the stipulation. *See also* Exh.

208 (stay relief equity analysis worksheet). The Court, upon reviewing that stipulation, issued an Order granting ISUCU stay relief.

Several months later, ISUCU had not enforced its rights against the Property, and Midland filed a motion for relief from the automatic stay in Debtor's case. Again, Trustee conducted an equity analysis and determined that, under the circumstances at the time, there was no equity in the Property for Debtor's estate. Thus, he did not object to Midland's motion for stay relief, and the Court granted that relief.

Shortly thereafter, Midland began the foreclosure process as to the Property by recording a Notice of Default on June 25, 2009. A foreclosure sale was scheduled for November 3, 2009. In response to the foreclosure sale notice, Herter engaged ISUCU, seeking to refinance the Property so he could pay off Midland's interest and retain his home. Desiring to protect its own second-priority interest in the Property against the Midland foreclosure, ISUCU agreed to the refinancing.

As part of the refinancing process, Debtor executed a quitclaim deed in favor of Herter. Exh. 104. The deed recites that "For Value Received," Debtor did "hereby convey, release, remise and forever quit claim unto David Herter, an unmarried man ... the [Property]." *Id.* An appraisal of the Property was also ordered at that time, and estimated the Property's value to be $124,500.

With the quitclaim deed in place, Herter and ISUCU concluded the refinancing transaction. Herter received a $102,200 loan from ISUCU, used that money to pay off his debts to Midland and ISUCU. To secure the new loan, Herter granted ISUCU a new first-position deed of trust

---

testified that such an analysis was concluded

in connection with Herter's case.

against the Property, now in Herter's name only.

When he discovered that Debtor had quit-claimed her interest in the Property to Herter, and that Herter had executed a new deed of trust to ISUCU on the Property, Trustee initiated this adversary proceeding, seeking to avoid both of those "transfers" pursuant to § 549(a), and seeking to void the recording of the new deed of trust as a violation of the § 362(a) automatic stay.

Defendants raised a variety of defenses to Trustee's claims. In addition, Defendants applied for approval of an administrative expense in the amount of $102,200 "in the event that Trustee prevails." The parties and the Court agreed that ISUCU's claim for an administrative expense should be resolved in connection with the Court's decision on the issues in the adversary proceeding.

## Discussion

### I. Several of Defendants' theories and arguments have already been rejected by the Court.

Of the arguments raised by Defendants at trial, several have already been previously analyzed and addressed by the Court, including whether Debtor's estate has an interest in the Property, whether Trustee should be estopped from avoiding the post-bankruptcy transfers, and whether the interest in the Property held by Debtor's bankruptcy estate has been forfeited.

#### A. *Debtor's bankruptcy estate had an interest in the Property.*

Defendants argue that either (1) all interests in the Property were abandoned to Herter pursuant to § 554(c) when his bankruptcy case closed; or (2) the automatic stay and discharge injunction prevented the operation of state law to convert the couple's community property interests in the Property into jointly-held interests as tenants in common, and, therefore, there was no interest in the Property that could have become property of Debtor's bankruptcy estate.

■ As explained in the Court's September 2 Decision, Herter's bankruptcy, including the technical abandonment of the Property, did not transfer title in the Property to Herter free of Debtor's interest. *See also In re Manchester Heights Assocs., L.P.,* 165 B.R. 42, 44–45 (Bankr. W.D.Mo.1994) (indicating that abandonment is not a means of effecting a transfer of title); *In re R–B–Co., Inc. of Bossier,* 59 B.R. 43, 45 (Bankr.W.D.La.1986) (same); *First Carolina Fin. Corp. v. Caron (In re Caron),* 50 B.R. 27, 31–32 (Bankr.N.D.Ga. 1984) (indicating that abandonment is not intended to determine issues of ownership and possession of property). When the Property was technically abandoned via the closing of Herter's bankruptcy case, the Property was relinquished by Herter's bankruptcy estate, but remained subject to Debtor's ownership interest. *See also Catalano v. Comm'r of Internal Revenue,* 279 F.3d 682, 685 (9th Cir.2002) (explaining that abandonment is merely the relinquishment of property of the estate, and that a debtor, upon the abandonment of property, only has that interest in the property which he held when filing his petition); *Dewsnup v. Timm (In re Dewsnup),* 908 F.2d 588, 591 (10th Cir. 1990) (indicating that property, upon abandonment, reverts to its pre-bankruptcy status); *Newkirk v. Wasden (In re Bray),* 288 B.R. 305, 307 (Bankr.S.D.Ga.2001) (same).

■ The Court has also twice analyzed the automatic stay's effect on the divorce decree's property provisions. *See* June 21 Decision at 21–24; September 2 Decision at 10–13. As previously determined, while

the divorce decree was effective to dissolve the couple's marriage, because of the automatic stay, it could not divide their property interests. *See* § 362(a)(3), (b)(2)(A)(iv) (providing an exception to the automatic stay for the dissolution of marriage, but not for the division of estate property); *Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d 932, 934 (9th Cir. 2009) (indicating that "judicial proceedings" violating the automatic stay are void). Once Herter's bankruptcy estate closed, and the Property was abandoned from his estate, however, it could no longer be community property, because no marital community existed between Herter and Debtor. *See Desfosses v. Desfosses*, 120 Idaho 354, 815 P.2d 1094,1098 (1991) (indicating that divorce terminates a marital community). To resolve the "limbo" in the Property's ownership created by the stay's effect on the couple's divorce decree property provisions, state law operated to deem the couple's interests in the Property at that time as tenants in common. *See Quinlan v. Pearson*, 71 Idaho 26, 225 P.2d 455, 456 (1950) (indicating that, where, for some reason, a divorce decree does not dispose of spouses' community property, they thereafter hold the property as tenants in common).

■ Likewise, the discharge injunction existing in Herter's case did not prevent the operation of state law to recharacterize the couple's property interests. That discharge injunction "operates as an injunction against [actions] to collect, recover or offset any [discharged debt] as a personal liability of the debtor." § 524(a)(2).[5] Here, there was no action to collect, recover, or

offset a discharged debt. State law merely operated to fill the gap left by the voided divorce decree property distribution. The discharge injunction did not prevent such.

**B.** ***Trustee's actions in consenting to stay relief, and the abandonment of the Property in Herter's case, do not estop him from fulfilling his duties as trustee in Debtor's bankruptcy case.***

■ The Court analyzed Defendants' estoppel argument in its June 21 Decision. Trustee's action, in seeking to avoid the transfer from Debtor to Herter, and from Herter to ISUCU, pursuant to § 549, and requesting a finding that the transfer from Herter to ISUCU was void pursuant to § 362, is consistent with his obligations as the chapter 7 trustee in Debtor's case. The value of the interest in the Property available to Debtor's bankruptcy estate changed when Herter and ISUCU paid off the outstanding loans on the Property. Trustee, in his role as trustee in Debtor's case, has an affirmative duty under the Code to pursue that value for the benefit of Debtor's creditors. *See* § 704(a)(1); *United States v. Aldrich (In re Rigden)*, 795 F.2d 727, 730 (9th Cir.1986) (explaining that a trustee has a duty to maximize distribution to creditors). Doing so is not inconsistent with his prior approaches to the Property, when it would not have yielded a benefit to Herter's or Debtor's estates. As a discretionary matter, the Court declines to hold that the doctrine of estoppel prevents Trustee's action against ISUCU under these facts.[6]

---

**5.** Defendants also assert that the discharge injunction of § 524(a)(3) prevents the operation of Idaho law to characterize the couple's interests in the Property. That section of the Code, however, prevents actions to recover on a community claim from community property

acquired post-petition, and does not apply here.

**6.** Of course, Defendants could have avoided all of these complications by simply seeking abandonment of the Property in Debtor's bankruptcy case before undertaking the refi-

C. *Debtor's statement of intent indicating her intent to surrender her interest in the Property did not operate to "forfeit" that interest.*

██ As stated in the Court's June 21 Decision, Trustee did not forfeit Debtor's bankruptcy estate's interest in the Property by not, *sua sponte,* verifying whether Debtor had surrendered her interest in the Property, or petitioning the Court to compel Debtor to surrender that interest. *See* June 21 Decision at 35–41 (analyzing the requirements of §§ 521(a)(2) and 704(a)(3)); *In re Bayless,* 78 B.R. 506, 510 (Bankr.S.D.Ohio 1987) (indicating that, absent a creditor requesting the trustee's involvement, a trustee may assume a debtor has performed her stated intention).

## II. Defendants' new arguments also lack merit.

In addition to rehashing the arguments previously rejected, Defendants submit several new contentions as a defense to Trustee's claims. They also lack merit.

### A. *Debtor's quitclaim deed was sufficient to transfer an interest in the Property.*

██ Defendants argue that, due to the type of instrument utilized by Debtor to transfer her interest in the Property to Herter, no "transfer" occurred that Trustee may avoid for the purposes of § 549(a). The foundation for this argument is that (1) by executing a quitclaim deed, Debtor only transferred to Herter whatever interest she may have had in the Property at the time of the purported transfer; and (2)

Debtor did not have any interest in the Property at the time she executed the quitclaim deed because all of her interests in the Property were, by then, property of her bankruptcy estate. Therefore, the argument goes, there was no "disposing of or parting with" an interest in property held by Debtor, and, thus, no avoidable transfer. *See* § 101(54) (defining transfer to include, "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(I) property; or (ii) an interest in property").

A bankruptcy estate typically includes all of a debtor's property interests in existence as of the date the debtor files the petition. *See* § 541(a). However, simply because a debtor's interest in property passes to the bankruptcy estate, it does not mean the debtor can no longer go through the mechanics of transferring estate property.[7] *See Olson v. Parker (In re Parker),* 395 B.R. 12, 19–20 & n. 11 (Bankr.W.D.Mich.2008) (avoiding a postpetition quitclaim deed transfer, and analyzing, in general, the concept of how a debtor can transfer property of her bankruptcy estate). If ISUCU's argument was correct, there would be no purpose served by § 549(a). *See Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 573–74 (9th Cir.1992) (indicating that § 549 is limited in applicability to postpetition transfers where the *debtor* is a willing participant). Per the quitclaim deed, Debtor "convey[ed]" and "release[d]" the Property to Herter. Exh. 104. As ISUCU and Herter obviously intended, the quitclaim deed would have been sufficient

---

nancing process. *See* § 554(b). That they neglected or declined to do so is an important factor in the Court's weighing of the equities in this action.

7. Indeed, despite § 541(a), in some limited circumstances, a debtor's post-bankruptcy transfers are recognized as valid by the Code.

*See* § 549(c) (providing that a trustee may not avoid a debtor-initiated post-petition real property transfer when made to a good faith purchaser for fair equivalent value without knowledge of the commencement of a bankruptcy case).

under state law to transfer Debtor's interest in the Property for the purposes of Idaho's recording statutes, and, absent Debtor's bankruptcy filing, the transfer would have been valid. *See* Idaho Code §§ 55–601, 55–801; *see, e.g., Bliss v. Bliss,* 127 Idaho 170, 898 P.2d 1081,1085 (1995) (indicating that a quitclaim deed is a valid conveyance of legal title to real property under Idaho Code § 55–601). Because of Debtor's bankruptcy filing, however, Trustee may undo any transfers that are found to be inappropriate under § 549(a).[8]

**B. *Trustee may avoid the transfer by Debtor to Herter via the quitclaim deed pursuant to §§ 549(a) and 550(a).***

Debtor-initiated transfers of estate property may be avoided where they occur post-petition and have not been authorized by the Code or the court. § 549(a). Here,

Debtor's transfer of her interest in the Property occurred post-petition. Defendants, however, argue that, somehow, entry of the stay relief order in favor of ISUCU "authorized" Debtor to transfer her interest in the Property to Herter.[9] But this is incorrect. The stay relief order granted relief to ISUCU to proceed to enforce its state law rights under its deed of trust; the order did not authorize Debtor to make a transfer to Herter. *See* Bankr. No. 08–41160, Dkt. No. 22.

Where a trustee avoids a post-petition transfer pursuant to § 549, § 550(a) allows the trustee to recover the transferred property, or its value, from either the initial transferee or any successive transferee for the benefit of the bankruptcy estate.[10] Trustee requests that, via his avoidance claim, Debtor's estate receive either her interest in the Property free

8. Section 549(a) provides:
   (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
   (1) that occurs after the commencement of the case; and
   (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
   (B) that is not authorized under this title or by the court.

9. Defendants argue at length in their briefs that, because relief from the automatic stay authorized a remedy in favor of ISUCU as extreme as foreclosure, it surely must also authorize a creditor to execute a refinancing agreement. Thus, they contend, the resolution of this adversary proceeding hinges on the question, "If the Trustee can NOT avoid a post-petition, post-stay termination foreclosure sale, why can he avoid a post-petition, post-stay termination refinance transfer of the same debt?" That question is answered by looking to the party engaging in the post-petition transfer conduct. While a foreclosure conducted by a creditor who has obtained stay relief is appropriate, the granting of a new deed of trust in association with a refinancing is an action taken by the party seeking the refinancing. *See Hopkins v. Sun-*

*Trust Mortg., Inc. (In re Ellis),* 441 B.R. 656, 662–63 (Bankr.D.Idaho 2010). Where a debtor creates a new interest in property in favor of a creditor through refinancing, the transaction is not analyzed under § 362, but under § 549. *Id.* at 662. Here, of course, the party providing ISUCU with a new interest in property of Debtor's estate was Herter, and not Debtor. Regardless, in connection with Debtor's transfer to Herter, and then Herter's transfer to ISUCU, the creditor was not the party acting to control or dispose of the Property. In sum, ISUCU's stay relief was inconsequential as to whether Debtor could transfer property to Herter in this context.

10. Section 550(a) provides:
   Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from—
   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
   (2) any immediate or mediate transferee of such initial transferee.

and clear of ISUCU's lien, or that a money judgment be entered against Defendants in the amount of the value of Debtor's interest in the Property. However, where the record lacks evidence of a transferred property's market value, or where there is conflicting evidence on that value, the return of the property transferred, rather than an award of its value, is the appropriate remedy in an avoidance action. *USAA Fed. Sav. Bank v. Thacker (In re Taylor)*, 599 F.3d 880, 891 (9th Cir.2010) (quoting *Rodriguez v. Daimlerchrysler Fin. Servs. Ams. LLC (In re Bremer)*, 408 B.R. 355, 360 (10th Cir. BAP 2009)).

█ Here, there was little evidence provided as to the Property's value when the Debtor–Herter quitclaim deed was executed. While a residential appraisal was conducted in association with the refinancing process, the reliability of that appraisal was persuasively challenged at trial. The Court therefore finds that, in this case, the more appropriate § 550(a) remedy is to order the return of Debtor's interest in the Property to her bankruptcy estate.

Moreover, under the Code, Trustee may recover Debtor's transferred interest in the Property from either Herter or ISUCU. § 550(a). Section 550(a) is designed to place a bankruptcy estate in the financial condition it would have been in had the avoided transfer not occurred. *In re Taylor*, 599 F.3d at 890. Thus, here, Trustee may recover Debtor's interest in the Property free of the new ISUCU deed of trust against the Property.

### C. Herter is not entitled to subrogation and contribution as against Debtor.

Defendants also argue that, if Herter and Debtor owned the Property as tenants in common, Herter is entitled to the equitable remedies of subrogation and contribution in exchange for his payment of Midland's lien against the Property.

Defendants first raised this argument in their post-trial brief; they did not assert such rights as a counterclaim, and did not previously assert subrogation or contribution as a defense. As a result, Trustee had no opportunity to discover facts related to the argument, could not address it at trial, and had little time to develop his own legal theories to address the issue in his reply brief. The Court declines to countenance such tactics, and will not consider Defendants' subrogation and contribution arguments. *See Depue v. Cox (In re Cox)*, 2011 WL 5509205 at *8 n. 21 (Bankr.D.Idaho Nov. 10, 2011) (refusing to consider a theory of equitable subrogation raised for the first time by plaintiffs in their final reply brief because it would not be equitable and justice would not be served).[11]

### III. Defendants are not entitled to an administrative claim in the amount of $102,200.

█ Finally, Defendants have applied for a $102,200 administrative expense in Debtor's bankruptcy case "in the event that Trustee prevails." Administrative expenses are provided for in § 503(b), which is to be strictly construed. *Gull Indus.*,

---

11. Even if the argument was timely, Defendants would face an uphill battle in arguing that, via a refinance to save the Property after it had been conveyed to Herter by Debtor, the equities somehow favor them against Debtor's bankruptcy trustee. *See, e.g., In re A.D.S.T., Inc.*, 169 B.R. 64, 66 (Bankr.D.Idaho 1994) (finding that, to be successful on a subroga-tion claim, the debt paid by the subrogee must not be one for which he was primarily liable). Defendants acted out of self-interest. As noted previously, at bottom, this litigation is a consequence of their failure to act prudently in determining, and resolving, the interests of Debtor's bankruptcy estate before pressing on with the new loan transaction.

*Inc. v. John Mitchell, Inc. (In re Hanna),* 168 B.R. 386, 388 (9th Cir. BAP 1994). The party asserting entitlement to administrative expenses must prove their right to such expenses by a preponderance of the evidence. *Id.*

▮ Administrative expenses are allowed in a bankruptcy case when a claim "(1) is incurred postpetition, (2) directly and substantially benefits the estate, and (3) is an actual and necessary expense." *Id.* In addition, the claim for an administrative expense must have arisen from a transaction with the trustee. *See Abercrombie v. Hayden Corp. (In re Abercrombie),* 139 F.3d 755, 757 (9th Cir.1998) (citing *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.),* 66 F.3d 1091,-1094 (9th Cir.1995)); *In re Cent. Idaho Forest Prods.,* 317 B.R. 150, 155 (Bankr.D.Idaho 2004); *Malden Mills Indus., Inc. v. Maroun (In re Malden Mills Indus., Inc.),* 303 B.R. 688, 706–07 (1st Cir.BAP2004). If preservation of an asset confers only an incidental benefit to the bankruptcy estate, administrative expense status is not appropriate. *In re Cent. Idaho Forest Prods.,* 317 B.R. at 154 ("[T]he fact that a benefit was conferred on or received by the estate does not alone or automatically justify allowance of an administrative expense."); *In re Coolex, Inc.,* 96.1 I.B.C.R. 35, 37 (Bankr.D.Idaho 1996).

▮ Defendants insist they should be entitled to an administrative expense because, via the refinance, Herter saved the property from foreclosure by Midland, and opened the door for Trustee to recover the Property for the benefit of the estate. But here there was no transaction with Trustee or the estate, and any benefit to the estate would be incidental to the benefit Defendants derived through the refinancing process. Indeed in pursuing the refinance transaction, both Herter and ISUCU

sought to protect their respective interests in the Property from loss through a foreclosure. Clearly, by acting in their self-interest, Defendants are not entitled to allowance of an administrative expense in Debtor's bankruptcy case.

### Conclusion

Trustee may avoid the post-petition transfer represented by the quitclaim deed from Debtor to Herter pursuant to § 549(a), and, under § 550(a), may recover, for the benefit of Debtor's estate, Debtor's undivided one-half interest in the Property free of any lien created by the deed of trust Herter thereafter granted to ISUCU. Defendants are not entitled to an administrative expense in Debtor's bankruptcy case.

Counsel for Plaintiff shall submit an appropriate form of judgment for entry by the Court. Counsel for Defendants shall approve the form of the judgment.