### In re CENTRAL IDAHO FOREST PRODUCTS, Debtor.

#### No. 01–20727.

United States Bankruptcy Court, D. Idaho.

Nov. 16, 2004.

Donald D. Hackney, Spokane, WA, Charles V. Carroll, Spokane, WA, for Debtor.

H. James Magnuson, Coeur d'Alene, ID, for Trustee.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Chief Judge.

### BACKGROUND AND FACTS

Central Idaho Forest Products, Inc. ("Debtor") filed a chapter 11 petition on May 25, 2001. The case was converted to chapter 7 on July 2, 2001. The chapter 7 trustee, Ford Elsaesser ("Trustee"), issued a "no asset" report on December 7, 2001, and the case was closed on January 3, 2002. It was reopened on the Trustee's request on April 1, 2004. Doc. No. 46.

#### A.

The matter before the Court is a request by William Buswell, Barbara Buswell, and William A. Buswell (the "Buswells") for allowance of an administrative expense under § 503 of the Bankruptcy Code. According to the Buswells, the situation is simple and straight-forward.

The Buswells indicate that they were employed by Debtor to clean up forest materials known as "slash" and were never paid for this work. The Buswells eventually filed a lawsuit against Dennis and Kathryn Drake, who they characterize as "principals of the ... Debtor." *See* Doc. No. 48 at 2. They contend that "[a]s part of that suit, [their] attorney discovered" that "slash funds" had been retained by the Idaho Department of Lands pending completion of Debtor's cleanup of timber harvest operations. *Id.* These funds belonged to Debtor under the agreements between Debtor and the State. The funds had been paid by the State to Debtor's principals sometime after closing of the case in 2002. *Id.*

Based on that discovery, Debtor's bankruptcy case was reopened and $19,960.90 in slash funds were paid to the Trustee, providing a significant benefit to the estate.[1] The Buswells request allowance of an administrative expense for $2,564.50 in attorney fees and costs they incurred in bringing the undisclosed asset to light and into the estate. *Id.; see also* Doc. No. 54 at 1–2.

### B.

A hearing on the request was held on October 5, 2004. All creditors were given notice. There were no objections filed to the Buswells' request, and no parties appeared in opposition. The Buswells summarized the situation and their request at this hearing in terms consistent with the foregoing summary. The Trustee recommended granting the administrative expense application based on what he viewed as the Buswells' significant contribution to the estate. The Court questioned the Buswells' counsel about the statutory authority relied on for the request. The matter was taken under advisement following the filing of the Buswells' post-hearing brief.

### C.

The record includes not just the foregoing summary. The application is supported by the affidavit of David Hammerquist, one of the attorneys for the

Buswells. *See* Doc. No. 51. Attached to this affidavit are pleadings from the state court litigation between the Buswells and the Drakes.[2] Additionally, the Court has reviewed and will refer to pleadings previously filed in this case. This information sheds some additional light on what occurred.

Debtor's petition for chapter 11 relief was executed by Dennis L. Drake, its President. Doc. No. 1.[3] When the schedules were filed, they indicated that the Buswells were also "equity security holders" in Debtor. *See, e.g.,* Doc. No. 6 (at list of equity security holders). This schedule, and Debtor's statement of financial affairs, disclosed that the Buswells were minority stockholders with William Buswell owning 18% of the outstanding equity in Debtor, and William A. Buswell owning 18% as well. *Id.* at statement of financial affairs, response to question 21.[4]

The Buswells were not shown on any of the schedules as "creditors" of Debtor. *Id.* William A. Buswell was, however, shown as a "co-debtor" on an obligation owed to creditor Firstbank Northwest. *Id.* at schedule H.

Debtor did not disclose on schedule B any entitlement or claim to the slash funds held by the State of Idaho Department of Lands. *Id.*

---

1. The Buswells' submissions indicate that Dennis Drake, Debtor's President, obtained an asset of Debtor's estate and failed to turn it over to the Trustee. This conduct, and related issues of disclosure, must be reviewed by the Trustee and U.S. Trustee and evaluated to determine if additional action before this Court or referral under 18 U.S.C. § 152 is appropriate.

2. Generally factual matters are not established by affidavit. *See* Fed. R. Bankr.P. 9014(d). However, since that Rule concerns how "disputed material factual issues" are proven, and since no factual dispute has been

presented in this matter, the Court is comfortable in addressing these submissions.

3. In addition to being the President of Debtor, Dennis Drake and his wife owned 38% of Debtor. *See* Doc. No. 6 (at list of equity security holders and at statement of financial affairs).

4. The statement of financial affairs also indicated that Debtor provided monthly financial statements to the Buswells prior to the bankruptcy filing. *Id.* at response to question 19(d).

154

Mr. Hammerquist's affidavit discusses the Buswells' state court action against the Drakes. Doc. No. 51. According to counsel, the Buswells argued in that action that "either the slash funds belonged to the Buswells or should be turned over to the bankruptcy trustee." *Id.* at 2. In the absence of Drakes' compliance with discovery, counsel went directly to the Department of Lands and obtained information about the funds, determining that payment had been made to "Central Idaho Forest Products" in a total amount of $19,960.90 "c/o [in care of] Dennis Drake" in December 2002. *Id.* at 2 and at Ex. B.[5]

One of the exhibits to the Hammerquist affidavit is an affidavit of William A. Buswell submitted in support of summary judgment in the state court action. *Id.* at Ex. A. In this sworn affidavit, Mr. Buswell indicates that he and his father, William Buswell, "performed labor on lands belonging to Harold Link *pursuant to a contract with Central Idaho Forest Products Inc.* on land to clean up forest materials commonly known as 'slash'." *Id.* at 3, ¶ 10 (emphasis added). He states: "There had been retention monies placed with the Idaho Department of Lands *by Central Idaho Forest Products Inc.* which state agency held the monies pending the slash clean up which my father and I performed." *Id.* at 3, ¶ 11 (emphasis added).

The Buswells had not been paid. To the extent they had a claim against Debtor, they were on notice of the bankruptcy. *See* Doc. No. 2 (Bankruptcy Noticing Center (BNC) certificate of service of § 341(a) notice in 2001). The Buswells clearly believed Drake had some independent liability to them, as reflected by their lawsuit. But it is further and also clear that they were pursuing payment from the funds owed *Debtor* which had been retained by the Department of Lands. Doc. No. 51 at 3–4, ¶¶ 11, 13 (indicating Drake authorized William A. Buswell to pick up the retained funds, which he attempted to do only to learn that they had already been paid to Drake.)

## DISCUSSION AND DISPOSITION

■ There is little doubt that, without the Buswells' efforts, the chapter 7 estate of Debtor might have remained closed and without assets for distribution. But the fact that a benefit was conferred on or received by the estate does not alone or automatically justify allowance of an administrative expense. The request must instead be evaluated and determined under the applicable provisions of the Bankruptcy Code. The Court concludes, under those authorities and for the reasons set forth below, that the request must be denied.

### A.

■ In undertaking, indeed in even commencing, this analysis of § 503(b) and the Buswells' application, the Court is sensitive to the fact that no creditor of the estate objects and that the Trustee supports the Buswells' request. Undoubtedly, the path of least resistance would be to summarily grant the application as unopposed.

However, there is a compelling reason not to take the easy route. This Court is obligated to follow and apply the law, even where the litigants unanimously (either affirmatively or through their silence) urge otherwise.

5. The State had no cancelled checks, but the documents provided to the Buswells indicate the "vendor" that was paid was "Central Idaho Forest Products c/o Dennis Drake" and the "certificate[s] of completion" of the work on the logged property were all similarly titled or addressed. Doc. No. 51 at Ex. B.

The Court has often acknowledged this overarching duty. It held in *In re Millspaugh*, 302 B.R. 90, 03.4 I.B.C.R. 222 (Bankr.D.Idaho 2003), that "courts are not required to grant a request for relief simply because the request is unopposed." *Id.* at 95 (quoting *In re Franklin*, 210 B.R. 560, 562 (Bankr.N.D.Ill.1997)). It also noted the Bankruptcy Appellate Panel's observation that "[t]he granting of an uncontested motion is not an empty exercise but requires that the court find merit to the motion." *Id.* (quoting *Nunez v. Nunez (In re Nunez)*, 196 B.R. 150, 156–57 (9th Cir. BAP 1996)).

Similarly, in *In re Lancaster*, 03.1 I.B.C.R. 31, 2003 WL 109205 (Bankr.D.Idaho 2003), the Court recognized that lack of opposition "does not absolve the Court of its responsibility to ensure that relief may be properly entered." *Id.* at 32, 2003 WL 109205. *Accord Lakeshore Tie & Lumber, Inc. v. Mirth (In re Mirth)*, 99.4 I.B.C.R. 146, 147 (Bankr.D.Idaho 1999); *Roberts v. Nat'l Mortgage Servs. (In re Roberts)*, 98.4 I.B.C.R. 106 (Bankr.D.Idaho 1998).

■ As one court recognized "[a] judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty he cannot discharge by remaining inert." *Wetherbee v. Willow Lane, Inc. (In re Bestway Prods., Inc.)*, 151 B.R. 530, 540 n. 31 (Bankr.E.D.Cal. 1993) (quoting *United States v. Marzano*, 149 F.2d 923, 925 (2d Cir.1945) (L.Hand, J.)).

■ The "equities" of the situation, as viewed by the parties or even by the Court, do not alone control; the equitable powers of the Court can be exercised only insofar as the Code and Rules allow. *See, e.g., Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1124–25 (9th Cir.2000). Though a "court of equity," this Court lacks the "discretion to redistribute rights in accordance with his personal views of justice or fairness, however enlightened those views might be." *Id.* at 1125 (quoting *IRS v. Kaplan (In re Kaplan)*, 104 F.3d 589, 597–98 (3d Cir.1997)). Adhering to the rule of law, instead of *ad hoc* adjudication based on perceived equities, promotes uniformity in decisions, predictability of results, and confidence in the impartiality of the courts.

The Court therefore considers the merits of the Buswells' request, notwithstanding the lack of objection.

**B.**

■ An administrative expense allowed under § 503(a) entitles the holder to priority in distribution. *See* § 507(a)(1). The burden of proving an entitlement to an administrative expense is on the claimant. *Texas Comptroller v. Megafoods Stores, Inc. (In re Megafoods Stores, Inc.)*, 163 F.3d 1063, 1071 (9th Cir.1998). While the Court has broad discretion to grant administrative expense requests, it is required to construe § 503(b) narrowly to keep costs to a minimum and preserve the limited assets of the bankruptcy estate for the benefit of unsecured creditors. *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995); *In re TSB, Inc.*, 302 B.R. 84, 87, 03.4 I.B.C.R. 220, 221 (Bankr.D.Idaho 2003).

**C.**

The Buswells argue that their requested administrative expense may be allowed under § 503(b)(1). Section 503(b)(1)(A) states that after notice and a hearing, administrative expenses shall be allowed, including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for

services rendered after the commencement of the case."

■ In order to qualify for a administrative expense under § 503(b)(1)(A), the Buswells must demonstrate "that the debt asserted to be an administrative expense (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefited the estate." *Megafoods,* 163 F.3d at 1071–72; *TSB,* 302 B.R. at 87.

■ The Buswells request a portion of the attorneys' fees and costs of Mr. Hammerquist and his law firm be treated as an administrative expense. This specific claim did not arise out of any contract or transaction with the chapter 11 debtor in possession or estate within the contemplation of the authorities.[6] Rather, the expense relates to the Buswells' post-bankruptcy litigation against third parties, the Drakes. The authorities cited by the Buswells and the arguments they advance in their written and oral submissions do not support application of § 503(b)(1)(A).

### D.

■ The Buswells' primary argument arises under § 503(b)(3)(B).[7] This section provides an administrative expense for

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

. . .

(B) a creditor that recovers, after the court's approval, for the benefit of the estate, any property transferred or concealed by the debtor[.]

§ 503(b)(3)(B). If the Buswells qualify under this section, the attorneys' fees and costs they incurred are allowable under § 503(b)(4), which provides administrative expense treatment for:

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

§ 503(b)(4).[8]

No party has disputed that the efforts of the Buswells, through Mr. Hammerquist, had the effect of providing a benefit to the estate. It can also be fairly argued that

---

**6.** The Buswells *may* have a claim under § 503(b)(1)(A) if it can be established that their contract to perform labor and clean up slash arose after the May 25, 2001 chapter 11 filing date, or that the contract arose prepetition but was performed by the Buswells postfiling. That particular claim has yet to be asserted, and the present record is not adequate to allow the Court to resolve it. But it is clear that this sort of claim is materially different than that asserted under the instant request, which concerns only the fees incurred by Mr. Hammerquist between July 2003 and March 2004 in connection with the litigation. *See* Doc. No. 51 at Ex. C.

**7.** At the hearing, the Buswells also argued that the request could be allowed under § 503(b)(3)(D) on the idea that they made a "substantial contribution" to the case. The Buswells abandoned the § 503(b)(3)(D) argument in their post-hearing briefing.

**8.** In this case, the only expenses being sought by the Buswells are those portions of the legal fees and costs they incurred in their litigation with Drakes as identified in Exhibit C to Doc. No. 51. Thus, the operative provision for allowance is § 503(b)(4), but the Buswells must nevertheless first establish that they would qualify under § 503(b)(3)(B).

they "recover[ed] . . . property transferred or concealed by the debtor."

However, it is also clear that the Buswells did not seek or obtain the prior court approval to pursue possible recoveries for the estate that § 503(b)(3)(B) requires. The Buswells argue that this defect should not bar their request. The Court concludes they are wrong.

■ The Court is not at liberty to simply ignore the language found in § 503(b)(3)(B). Bankruptcy courts are required to defer to the statutory language of the Code and to follow its "plain meaning." *See Lamie v. United States Tr.*, 540 U.S. 526, 124 S.Ct. 1023, 1030–31, 157 L.Ed.2d 1024 (2004); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (instructing that if the Bankruptcy Code's "language is plain, 'the sole function of the courts is to enforce it according to its terms' "); *see also Leonard v. St. Rose Dominican Hospital (In re Majewski)*, 310 F.3d 653, 656 (9th Cir.2002) (same).

To allow an administrative expense to a party for the recovery of a transferred or concealed asset *without* that party obtaining prior Court approval, would be tantamount to deleting the phrase from the statute. Doing so would alter the plain meaning of § 503(b)(3)(B) and render its language—"after the court's approval"—nugatory. Courts should be circumspect in interpreting the Code in such a way. *See Cohen v. Tran (In re Tran)*, 309 B.R. 330, 337 (9th Cir. BAP 2004) (the goal is to "give effect, if possible, to every clause and word of a statute") (quoting *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

Creditors counter that, because § 503(b) states that "there shall be allowed administrative expenses . . . *including*" those specifically listed in subsections (1) through (6), such listing must be nonexclusive.

Creditors are correct that use of the term "including" creates an illustrative rather than exclusive list. *See* § 102(3) (noting that as a rule of construction, " 'includes' and 'including' are not limiting"); *see also Megafoods*, 163 F.3d at 1071 (citing *In re Mark Anthony Constr., Inc.*, 886 F.2d 1101, 1106 (9th Cir.1989), and recognizing that § 503 sets forth a "nonexclusive" list of administrative expenses). However, the question is then whether this rule of construction should trump an *express* limitation found in one of the enumerated subsections. In *Freytag v. Comm'r*, 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991), the Supreme Court stated that "[o]ur cases consistently have expressed 'a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment.' " *Id.* at 877, 111 S.Ct. 2631 (quoting *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 562, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)). The approach suggested appears to do just that.

Creditors point to cases from other districts that have allowed administrative expense claims to creditors who did not receive court approval prior to recovering an asset for the benefit of the estate. *See, e.g., In re Zedda*, 169 B.R. 605 (Bankr. E.D.La.1994); *In re Antar*, 122 B.R. 788 (Bankr.S.D.Fla.1990); *In re George*, 23 B.R. 686 (Bankr.S.D.Fla.1982). These cases generally rely on (a) the fact that § 503(b) provides a nonexclusive list of administrative expenses, (b) equitable considerations, and (c) the ability of the courts to enter approval retroactively.

However, these theories and cases have been analyzed and rejected by a number of other courts, including this one. *See In re Hagberg*, 85 I.B.C.R. 242 (Bankr.D.Idaho 1985). In *Hagberg*, Bankruptcy Judge Alfred C. Hagan denied a creditor's appli-

cation for administrative expense, holding that even though the creditor's efforts would result in all claims being paid in full, the Code requires Court approval before the creditor undertakes the recovery action in order for the creditor to qualify for an administrative expense. *Id.; see also In re Schachter,* 228 B.R. 359 (Bankr. E.D.Pa.1999); *In re Fall,* 93 B.R. 1003 (Bankr.D.Or.1988); *Lazar v. Casale (In re Casale),* 27 B.R. 69 (Bankr.E.D.N.Y.1983).[9]

▉ Creditors have not presented the Court with a compelling reason to depart from Judge Hagan's decision in *Hagberg.*[10] If anything, the decisional trend since 1985 even more strongly enforces the idea that the plain language of the Code is to be followed. *See* discussion *supra.*

It is also fair to note that the circumstances here do not support the Buswells implicit proposition that the situation falls in a gray area not expressly addressed by the Code.[11] Here, the Buswells knew that Debtor was entitled to an asset—the monies retained by the State of Idaho under Debtor's contracts. The status of the Buswells as minority owners of Debtor, their knowledge of the bankruptcy filing, and even their own state court pleadings (which took the position that they should have the money but, if they could not, then

the Debtor's trustee should), all reflect that they were aware they were pursuing what was or could be a concealed asset of Debtor's estate. They could have at that time sought to reopen the Debtor's case[12] and requested Court approval before attempting to recover the asset.

That they did not may well be because their first preference was for this asset be awarded to them alone, and that its delivery to the Trustee was only a fallback position. Perhaps they did not appreciate the fact that, absent the Court's prior approval, the legal expenses they incurred would not qualify for administrative expense treatment and priority when the Trustee recovered and distributed Debtor's asset.

Contrary to what the initial motion and argument could be fairly read as implying, this was not a situation where the Buswells simply stumbled across an asset of Debtor's estate during other, independent litigation. The benefit to the estate was not just a fortuitous, tangential outgrowth of the Buswells' litigation against Debtor's principals.

Rather, the additional facts outlined above establish that the Buswells sought in their litigation to recover an asset known

---

**9.** Besides addressing the plain meaning of the statute, both *Fall* and *Casale* note that § 64(a) of the Bankruptcy Act, which preceded § 503(b)(3)(B) of the Code, did not specifically require prior court approval for a creditor to recover property for the estate and obtain an administrative expense. Thus, relying on the "general rule of statutory construction ... that a change in the language of a statute indicates that a departure from the old law was intended," these courts concluded that Congress meant to require prior court approval for this type of administrative expense. The nonexclusivity argument therefore failed. *Casale,* 27 B.R. at 70; *Fall,* 93 B.R. at 1012.

**10.** In order to promote consistency and predictability, this Court departs from its prior

decisions, whether rendered by the same or another bankruptcy judge, only for compelling reasons. *In re DeBoer,* 99.3 I.B.C.R. 101, 103 (Bankr.D.Idaho 1999).

**11.** *See, e.g., Pergament v. Maghazeh Family Trust (In re Maghazeh),* 315 B.R. 650 (Bankr. E.D.N.Y.2004), in which the court followed the approach suggested by the Buswells in a situation where it found that the requesting party (there the United States) could not realistically have obtained prior court authorization.

**12.** *See* § 350(b), allowing case reopening to administer assets.

to be owed to Debtor. The slash funds were a target of the suit. That the Buswells primarily wanted those funds for themselves and only secondarily sought delivery to the Trustee is of significance in that it impeaches the "equities" the Buswells would have the Court apply to circumvent the language of § 503(b)(3)(B).

If they were to be compensated from Debtor's estate for the efforts in "recover[ing] . . . for the benefit of the estate . . . property transferred or concealed by the debtor," the Buswells were required to obtain prior Court approval. Even if the Court were inclined to swerve from the clear language and plain meaning of the Code, the circumstances here do not justify it.

## CONCLUSION

The Buswells' request for allowance of an administrative expense, Doc. No. 48, will be denied. A separate order will be entered.