**In re Phillip B. GRAY, Debtor.**

**No. 13–41018–JDP.**

United States Bankruptcy Court, D. Idaho.

Signed Nov. 3, 2014.

---

Steven L. Taggart, Maynes Taggart, PLLC, Idaho Falls, ID, for Debtor Phillip B. Gray.

Lane Erickson, Racine, Olson, Nye, Budge & Bailey, Chtd., Pocatello, ID, for Ross and Christina Rinas.

Kathleen A. McCallister, Meridian, ID, Chapter 13 Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### Introduction

Creditors Ross and Christina Rinas (the "Rinases") filed an application for an administrative expense under § 503(b)[1] for the attorneys fees they incurred in connec-

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

tion with their efforts to dismiss the bankruptcy case of Phillip B. Gray ("Debtor"). Dkt. No. 95.[2] Debtor and chapter 13 Trustee Kathleen McCallister ("Trustee") objected to the Rinases' application. Dkt. Nos. 96;104. In addition, Trustee objected to the amount of the Rinases' proof of claim filed in Debtor's case. Dkt. No. 99.

The Court conducted a hearing concerning the application and claim objection on September 9, 2014. At the conclusion of the hearing, the Court took the issues under advisement. This Memorandum of Decision sets forth the Court's findings of fact, conclusions of law, and decision concerning the issues. Rules 9014 and 7052.

### Facts

On May 28, 2010, Debtor and his ex-spouse Colleen Erickson ("Erickson") contracted to sell a mental health care business they owned known as Life Center for Change ("LCFC") to the Rinases.[3] The transaction generated a dispute, which resulted in litigation. On May 16, 2013, the Rinases obtained a default judgment in Idaho state court against Debtor in the amount of $77,451.83 (the "Judgment"). *See* Proof of Claim, 5–2 at 5.[4] Although the Rinases asserted claims against Debtor in state court for breach of contract, unjust enrichment, and fraud,[5] the Judgment did not specify the basis for the damages it awarded.[6]

Before entry of the Judgment, the state court addressed several issues on summary judgment. Notably, in one decision, the state court determined that a genuine issue of material fact existed as to whether Erickson and Debtor materially breached the contract for the sale of LCFC, and listed several allegations of fraud and breach of contract by the Rinases against both Erickson and Debtor. *Memorandum Decision on Summary Judgment,* Adv. No. 12–08053, Dkt. No. 10–2 at 20–21.

Erickson filed a chapter 7 petition on April 23, 2012, before entry of the Judgment. Bankr. No. 12–40552–JDP, Dkt. No. 1. On October 12, 2012, the Rinases filed an amended adversary complaint in Erickson's case seeking an exception to discharge pursuant to § 523(a)(2)(A), (a)(2)(B), and (a)(4) for the damages they claimed to have suffered due to alleged fraud by Erickson in the sale of LCFC. Adv. Proc. No. 12–08053, Dkt. No. 10.[7] On November 18, 2013, the adversary proceeding against Erickson was settled by the parties, with Erickson agreeing to pay

**2.** Unless otherwise indicated, docket references are to case number 13–41018–JDP.

**3.** A copy of the parties' contract of sale is attached as an exhibit to the exception to discharge complaint the Rinases filed against Debtor in this bankruptcy case. Adv. No. 14–08016, Dkt. No. 1–1.

**4.** Erickson was a third-party defendant in the state court case, however, the Judgment was solely entered against Debtor. As explained below, Erickson was likely left off of the Judgment because she was a debtor in a bankruptcy case pending at the time of entry of the Judgment.

**5.** The parties did not provide a copy of the state court complaint. This information is drawn from the exception to discharge adversary complaint referenced above. Adv. No. 14–08016, Dkt. No. 1 at ¶ 25.

**6.** The Court was not provided with the application for default judgment that was referenced in the Judgment, which may have provided an insight as to the basis for the damage award. The Rinases proof of claim is also unclear as to basis of the award. In it, the Rinases allege that the "basis for the claim" is "Breach of Contract/Fraud." Proof of Claim 5–2 at 1.

**7.** At the hearing on these issues the Court was asked to take judicial notice of only the amended adversary complaint filed against Erickson in Adversary Proceeding No. 12–08053. The Court has done so.

the Rinases $6,000 in installments. *See* Trustee's Exh. No. 200, Dkt. No. 107.[8]

Debtor filed a chapter 7 petition on August 16, 2013. Dkt. No. 1. The Rinases initially filed a proof of claim in Debtor's case for $130,090.30, based, in part, upon the Judgment. Proof of Claim 5–1. After the bankruptcy case was converted to chapter 13, Trustee objected to the Rinases' proof of claim on several grounds. Dkt. No. 99. Trustee argued that the proof of claim should be limited to the Judgment, together with some allowance for interest accruing before the filing of the bankruptcy case. *Id.* Trustee also argued that Rinases' claim against Debtor must be credited for the Erickson settlement payments of $6,000, because under applicable law, that amount reduces Debtor's liability to the Rinases under the Judgment. *Id.*[9] The Rinases thereafter filed an amended proof of claim on August 20, 2014, reducing their claim to the Judgment amount, with interest, to $78,476.74. Proof of Claim 5–2. At the hearing on the objection to the proof of claim, Trustee took issue with the amended proof of claim only to the extent that it did not include a credit for the Erickson settlement of $6,000.

On February 14, 2014, the Rinases filed a motion to dismiss Debtor's chapter 7 case for "abuse" under § 707(b). Dkt. No. 50. On the same day, the Rinases filed an adversary complaint against Debtor in which, similar to the allegations they had made against Erickson, they asserted that Debtor had engaged in fraud in the sale of LCFC, and they requested that the Judgment be excepted from discharge pursuant to § 523(a)(2)(A), (a)(4), and (a)(6). Adv. No. 14–08016, Dkt. No. 1.[10]

On May 6, 2014, the Court held an evidentiary hearing on the Rinases' motion to dismiss Debtor's chapter 7 case. After submission of evidence by the Rinases, Debtor made an oral motion to convert his case to one under chapter 13 pursuant to § 706. The Court granted Debtor's motion and converted the case. Dkt. No. 68.

After Debtor's case was converted, the Rinases filed their application for an administrative expense for the attorney's fees they incurred in pursuing the § 707(b) motion to dismiss, which they claim amounted to $17,134.02. Dkt. No. 95.

8. The settlement agreement includes a promissory note signed by Erickson where she agreed to pay $6,000 in 12 monthly payments of $500, which were to begin in January 2014. The Court has no reason to believe that Erickson has not complied with the promissory note and, according to its terms, full payment should occur by December 2014.

9. Trustee further argued that the Rinases' claim should be reduced by $33,000 because that amount "represents the balance due on the purchase price that the Rinases were to pay to [ ] Debtor and [Erickson] for the purchase of [LCFC] but which the Rinases never paid though they continued to operate the business." Dkt. No. 99 at 2–3. Trustee offered no documentary evidence regarding this amount in her objection, and failed to mention this requested reduction, or offer any proof of this amount, at the hearing on the objection to the proof of claim. The Court presumes this argument has been abandoned by Trustee. Even if Trustee persists in this argument, the Court rejects it for lack any evidentiary support.

10. At the hearing, the Court was asked to take judicial notice of the adversary proceeding complaint, Adv. Proc. No. 14–08016–JDP, Dkt. No. 1. The Court has done so. According to the docket, the adversary proceeding was resolved by stipulation of the parties wherein Debtor agreed the amount in the Rinases' proof of claim will be excepted from discharge in Debtor's bankruptcy case, and that any amount due on the Rinases' allowed proof of claim remaining after Debtor's chapter 13 plan is completed will be paid within 180 days after the date the chapter 13 case closes. *Id.*

Debtor and Trustee objected to this request. Dkt. Nos. 96; 104. The Court conducted a hearing on July 29, 2014, and required the Rinases to file a brief in support of their application, allowed Debtor and Trustee an opportunity to respond, and set this matter for further hearing. Dkt. No. 98. The parties filed the requested briefing. Dkt. Nos. 102, 104, 105, and 106. On September 9, 2014, the Court held a continued hearing on the issues presented. Dkt. No. 107. The parties appeared and presented evidence and argument. The Court thereafter took the issues under advisement.

### Analysis and Disposition

There are two issues pending before the Court: (1) whether the Rinases should be allowed an administrative expense for the attorney's fees and costs they incurred in pursuing the § 707(b) motion to dismiss; and (2) whether the Rinases' proof of claim should be reduced by $6,000 based upon the Erickson settlement payment.

### I. Administrative Expense Priority.

The Rinases argue they should be allowed a priority administrative expense pursuant to § 503(b). They contend that, solely through their efforts in pursuing the § 707(b) motion to dismiss, Debtor's chapter 7 case was converted to chapter 13, which will result in a significant dividend to Debtor's creditors. Because of this, the Rinases believe they should recover the attorney's fees they incurred in pursuing the dismissal motion. Debtor and Trustee disagree with this conclusion, and contend that none of the provisions of § 503(b) allow an administrative expense in this case.

#### A. Applicable Law

■ Administrative expenses allowed under § 503(b) are afforded priority in payment in bankruptcy cases. *See* § 507(a)(2) (providing second priority payment status to allowed § 503(b) administrative expenses). Section 503(b) sets forth a nonexclusive list of administrative expenses. *In re Cent. Idaho Forest Prods.*, 317 B.R. 150, 157 (Bankr.D.Idaho 2004) (citing § 102(3) and *Texas Comptroller of Pub. Accounts v. Megafoods Stores, Inc. (In re Megafoods Stores, Inc.)*, 163 F.3d 1063, 1071 (9th Cir.1998)). The party asserting an administrative expense bears the burden of proving its claim. *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995). While bankruptcy courts have broad discretion in determining whether a claim is entitled administrative expense status, the courts are instructed to narrowly construe § 503(b). *In re Azevedo*, 485 B.R. 596, 601 (Bankr.D.Idaho 2013) (citing *In re DAK Indus., Inc.*, 66 F.3d at 1094).

■ Section 503(b)(1)(A) provides that administrative expenses shall be allowed, including, "the actual, necessary costs and expenses of preserving the estate...." For costs and expenses to qualify under this provision, courts apply a two-part test, and ask: (1) whether the expense arose from a transaction with the bankruptcy estate; and (2) whether the transaction directly and substantially benefitted the bankruptcy estate. *In re Azevedo*, 485 B.R. at 600–01 (citing *Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755, 757 (9th Cir.1998); *In re DAK Indust., Inc.*, 66 F.3d at 1094; *Hopkins v. Idaho State Univ. Credit Union (In re Herter)*, 464 B.R. 22, 32 (Bankr.D.Idaho 2011)).

■ Section 503(b)(3)(B) provides for an administrative expense for "the actual, necessary expense, other than compensation and reimbursement specified in para-

graph (4)[11] of this subsection, incurred by—(B) a creditor that recovers, after the court's approval, for the benefit of the estate, any property transferred or concealed by the debtor[.]" As can be seen, the express language of this statute requires that a creditor obtain court approval for its actions *before* any recovery is obtained through the creditor's efforts. *See Arab Monetary Fund v. Hashim (In re Hashim)*, 379 B.R. 912, 921 (9th Cir. BAP 2007) ("Although § 503(b)(3)(B) is often described as a 'prior permission' requirement, precision requires sharper focus. The statute does not mandate that judicial approval be obtained before the action is filed. Rather, it authorizes administrative expense awards only if the court approves the action before recovery is obtained."); *In re Central Idaho Forest Prods.*, 317 B.R. at 157 ("To allow an administrative expense to a party for the recovery of a transferred or concealed asset *without* that party obtaining prior Court approval, would be tantamount to deleting the phrase from the statute.") (emphasis in original).

### B. Application of Law to Facts

■ The Court concludes that the Rinases have not shown that their legal expenses incurred in prosecuting the § 707(b) motion to dismiss Debtor's case should be allowed as an administrative expense under § 503(b). Specifically, the Rinases have not shown that their claim qualifies under § 503(b) generally, nor under the express provisions of § 503(b)(1)(A) or (b)(3)(B).

First, the Rinases have not offered, nor has the Court been able to locate, any authority which entitles a creditor to an administrative expense under § 503(b) generally for successfully[12] prosecuting a § 707(b) motion to dismiss. Construing § 503(b) narrowly, as required by the case law, the Court therefore declines to expand the list of administrative expenses in § 503(b) to include the attorneys fees Rinases incurred.

The Court also concludes that the Rinases have failed to show their attorney's fees incurred in prosecuting the § 707(b) motion were an "actual, necessary costs and expenses of preserving the estate" for purposes of § 503(b)(1)(A). Again, the Rinases do not cite the Court to any case in which a bankruptcy or appellate court has found such expense qualifies under this provision. Further, in applying the analysis under § 503(b)(1)(A), there is no proof that the Rinases participated in any transaction with the Debtor's bankruptcy estate. Therefore, the Rinases' claim under this provision must fail.

Finally, the Rinases' claim under § 503(b)(3)(B) also lacks merit. Here, the Rinases seek administrative expense status for their attorney's fees incurred in their efforts to dismiss Debtor's chapter 7. Of course, an administrative expense for such fees is properly sought under § 503(b)(4), but allowance requires the creditor that incurred the fees to qualify under § 503(b)(3)(B). *In re Central Idaho Forest Prods.*, 317 B.R. at 156 n. 8.

---

**11.** Section § 503(b)(4) provides an administrative expense for:

> reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under subparagraph ... (B) ... of paragraph (3) of this subsection....

**12.** Since the bankruptcy case was not dismissed as Rinases requested in their motion, it is doubtful they were "successful." However, for purposes of this analysis, the Court presumes that, as Rinases allege, that Debtor elected to voluntarily convert the case to chapter 13 solely to avoid dismissal. Of course, there is no direct proof of that in the record.

The Court finds, however, that the Rinases do not qualify for such status. As noted, § 503(b)(3)(B) requires prior court approval before a creditor may enjoy administrative expense status under this section. It is undisputed the Rinases did not obtain this Court's permission to pursue the recovery of any transferred or concealed asset. The Rinases contend this prior permission requirement should not bar administrative expense status to their claim. But this argument was considered and rejected in *In re Central Idaho Forest Prods.* as contrary to the express language of the statute, and the Court similarly rejects it here. In addition to this fatal flaw in their arguments, it is also doubtful that the Rinases' efforts resulted in the recovery of any transferred or concealed asset. Instead, the record shows that Debtor voluntarily converted his case to chapter 13, and as a result, will pay his creditors through his chapter 13 plan in order to receive a discharge. Therefore, the Rinases have failed to prove their claim should qualify under § 503(b)(3)(B).

For these reasons, the Rinases' application for an administrative expense will be denied.

## II. Objection to Proof of Claim.

Trustee objects to allowance of the Rinases' proof of claim. She argues there should be a credit against the claim for the $6,000 that Erickson paid them to settle the discharge litigation in her bankruptcy case because that amount reduces Debtor's liability for any damages resulting from the sale of LCFC. The Rinases argue that because the Judgment was against Debtor alone, the full amount of that judgment represents their claim in Debtor's bankruptcy case.

### A. Applicable Law

█ A timely proof of claim, filed in accordance with Rule 3001, constitutes prima facie evidence of the validity and amount of the claim. § 502(a); Rule 3001(f); *see also In re Parrott Broadcasting Ltd. P'ship*, 492 B.R. 35, 38 (Bankr.D.Idaho 2013) *("Parrott"); In re Schweizer*, 354 B.R. 272, 279 (Bankr.D.Idaho 2006). The party objecting to the allowance of a claim bears the burden "to produce evidence sufficient to negate the prima facie validity of the filed claim. If the objector produces evidence sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the claimant to demonstrate by preponderance of the evidence that the claim deserves to share in the distribution of the debtor's assets." *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (9th Cir. BAP 1993) (citing *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir.1992)); *see also Parrott*, 492 B.R. at 38.

Section 502(b) explains the circumstances under which the bankruptcy court may disallow an otherwise proper proof of claim:

> Except as provided in [other nonrelevant provisions], if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured....

Here, under § 502(b)(1), the Court's must determine whether "any agreement or applicable law" requires that the $6,000 settlement be credited against the amount due on the Rinases' claim against Debtor. *Travelers Cas. and Sur. Co. of Am. v. Pac.*

*Gas and Elec. Co.*, 549 U.S. 443, 450, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (citing *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)).

Under Idaho law,

the effect of a tortfeasor's release on other tortfeasors depends on whether there is joint and several liability. [Idaho Code] § 6–805(1) applies to "a release by an injured person of one (1) joint tortfeasor," i.e., there is joint and several liability, and allows the reduction of the claim against other tortfeasors for the amount of the settlement. [Idaho Code] § 6–805(2), on the other hand, applies to "a release by the injured person of one (1) or more tortfeasors who are not jointly and severally liable to the injured person" and only allows a reduction when the release so provides.

*Horner v. Sani–Top, Inc.*, 143 Idaho 230, 141 P.3d 1099, 1104 (2006) (quoting Idaho Code § 6–805); *see also Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 157 Idaho 106, 334 P.3d 780, 799 (2014) ("Under [Idaho Code § ] 6–805(1), a release by the injured person of one tortfeasor 'reduces the claim against the other tortfeasors in the amount of consideration paid for the release . . . .' ").

Here, the Judgment against Debtor was likely based upon the fraud he and Erickson perpetrated on the Rinases. Fraud is a tort, and Debtor is, therefore, a joint tortfeasor, or in other words, "one of two or more persons jointly or severally liable for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Idaho Code § 6–803(4). Under Idaho law, "[a] party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. As used in this section, 'acting in concert' means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act." Idaho Code § 6–803(5).

■ On the other hand, arguably, the damages represented by the Judgment were intended to compensate the Rinases for the breach of contract allegedly committed by Debtor and Erickson. In Idaho, "[t]he universal . . . rule is that contract damages are offset pro tanto by the amount of the settlement with a co-obligor. This is simply a manifestation of the rule that a contracting party should not receive more than was bargained for." *Evanow v. M/V Neptune*, 163 F.3d 1108, 1119 (9th Cir.1998) (citing 2 Samuel Williston & Walter H.E. Jaeger, *Williston on Contracts* § 341 (3d ed. 1959); *Restatement (Second) of Contracts* § 294(3) & cmt. f. (1979)).

### B. Application of Law to Facts

■ While on this record it is unclear whether the Judgment against Debtor was based upon the fraud (*i.e.*, a tort) or based upon Debtor's breach of the contract to sell LCFC to the Rinases, the impact of the Erickson settlement payment on Debtor's liability is the same. The Erickson settlement occurred in the context of the adversary complaint filed against her in her bankruptcy case. That complaint alleged Erickson made fraudulent statements and omissions in connection with the contract for the sale of LCFC, and in her conversations with the Rinases about that sale. These allegations mirror the claims made by the Rinases in state court against both her and Debtor, as explained by the state court in ruling on motions for summary judgment. *See Memorandum Decision on Summary Judgment*, Adv. No. 12–08053, Dkt. No. 10–2 at 20–21.

Under these circumstances, the Court concludes that tort law principles apply to determine the effect of the Erickson settlement on the Rinases' claim in Debtor's bankruptcy case. Seen in this fashion, Erickson and Debtor were jointly and severally liable for their fraudulent statements and omissions in the sale of LCFC, per Idaho Code § 6–803(4) and (5). Therefore, Erickson's settlement with the Rinases inured to the benefit of Debtor, and reduces his liability for damages for engaging in the same fraudulent conduct in the sale of LCFC. Idaho Code § 6–805(1); *Saint Alphonsus Diversified Care, Inc.*, 334 P.3d at 799; *Horner*, 141 P.3d at 1104.

But even were contract principles to apply, the same reduction of liability on Debtor's breach of the contract for sale of LCFC would occur. Debtor, as a co-obligor under the contract for the sale of LCFC, is entitled to credit for the Erickson payments made to the Rinases for their joint breach of the contract.

By providing the Erickson settlement documents evidencing the payments made by Erickson to the Rinases, Trustee successfully negated the prima facie validity of the filed proof of claim. The Rinases failed to satisfy their burden to show by a preponderance of the evidence that the full amount of the Judgment should be allowed as their claim in this case. Instead, the amount of the Rinases' proof of claim must be reduced by $6,000.

### Conclusion

For these reasons, the Rinases' motion for an administrative expense will be denied, and Trustee's objection to the Rinases' proof of claim will be sustained. The Court will enter a separate order.